AYRES, Judge.
This is an action for damages arising out of the collapse of a masonry wall allegedly constructed by defendant at the rear of plaintiff’s residence on Lakecrest Drive in the City of Shreveport.
Plaintiff alleged that, by verbal contract, defendant- agreed to build a wall and a flower b.ox for a price of $1,111.94. The wall, as built, had a dimension of approximately 60 feet in length and a height varying from lj^ feet to 41/2 feet. The wall collapsed about eight months after its completion, allegedly due to its improper construction, wrong materials, and faulty workmanship. Judgment was sought in the sum of $1,320.84, an amount contended necessary to rebuild the wall. Plaintiff contends, in brief, that the pleadings were enlarged by the introduction of testimony without objection; that, accordingly, the award should be increased to $2,200.00.
The defenses urged were twofold in character: (1) that defendant neither contracted nor built the wall, and (2) that the collapse thereof was not due to the use of improper materials or defective workmanship, but to a backfill and pressure against the wall produced by the dumping of 10 cubic yards of earth against the wall by the owner of the adjacent lot.
The trial court concluded that the latter defense was well-founded. Plaintiff’s demands were accordingly rejected and he appealed.
Primarily, only questions of fact are involved. The record discloses that defendant constructed plaintiff’s residence upon the lot herein concerned during the latter part of 1960. In the beginning of this construction the lot was graded and leveled, resulting in a cut or excavation at the rear of the lot. The purpose expressed for the construction of the wall was to keep the adjacent lot from eroding and then washing onto plaintiff’s lot. Hence, plaintiff contends he contracted with defendant to construct a retaining wall. Additional excavation was required as a prerequisite to the construction. Accordingly, a cut or excavation was made almost straight down within a foot of the adjacent lot, sufficient to permit.the construction of the wall of the dimensions as hereinabove set forth.
Defendant denies entering into such an agreement or that he built the wall, and *459 contends that, while plaintiff desired only a garden wall constructed of brick, other than constructing the concrete foundation for the wall, the wall was constructed by a brick mason as an independent undertaking of plaintiff and under whose supervision the work was done.
After the wall was constructed, the earth behind the wall began to slough off, eroding the adjacent lot. This was caused by the excavation not having been back-filled behind the wall. The owner of the adjacent lot complained of the presence of the excavation as not only causing his lot to erode but as a dangerous situation, especially to his children. The excavation not having been backfilled within a reasonable time, the owner of the adjacent lot caused 10 cubic yards of river sand to be dumped into it, thus effecting a back-fill of the opening behind the wall. Rains came and snow fell. The sand became wet and the pressure increased against the wall, causing approximately 70 percent of the wall to topple and fall. The concrete base consructed by defendant remained in place after the collapse of the wall.
First, logically, for consideration is the question as to whether a contract was entered into between plaintiff and the defendant for construction of the wall. The testimony of these parties is most contradictory. The issue must be determined by such facts and circumstances as may be gleaned from and as established in the record.
Defendant estimated, in a written proposal signed by him, item by item, the cost of the brick wall and flower box, which was the price agreed upon. This amount was paid in a lump sum by plaintiff to defendant. Defendant, as stated, admitted constructing the foundation; that the materials were purchased in his name, and that the work was done by a brick mason who did the work on plaintiff’s residence and who had worked for defendant for many years. It is further shown, by defendant’s admission, that he paid for the labor and the materials.
Plaintiff testified positively that he entered into a contract with defendant to construct the wall; that he never engaged! the services of anyone in connection with this project. In contrast to defendant’s testimony, plaintiff’s testimony is direct and positive, and, we believe, it is supported and corroborated by the facts and circumstances to which we have referred.
That the wall was insufficient as a retaining wall is conceded by defendant. He testified that he advised plaintiff, before the wall was built, that it should be constructed of reinforced concrete and not of brick. That he so informed plaintiff was denied by plaintiff. Defendant further testified, however, that, on seeing the wall immediately following its construction, he readily realized its insufficiency and so expressed himself to the brick mason. This information, however, was not conveyed to plaintiff.
There is no doubt that defendant knew plaintiff had a retaining wall in mind. From the nature of things, such as the depth and slope of the excavation, the defendant, as an expert in construction, knew that the situation required a retaining wall; nevertheless, he proceeded to construct a wall which he knew was insuf-' ficient for the purpose intended.
The conclusion is inescapable that-the wall collapsed by reason of its defective and improper construction. That the collapse was precipitated by the deposit of dirt behind it and the rains which fell' is a matter of no important consequence. It was contemplated that the excavation would be backfilled and that the wall would ■’ withstand the pressure generated by the backfill. Moreover, the evidence establishes that, on account of the erosion to the adjoining lot, the excavation would soon have been filled. The damage occasioned by the collapse of the wall is, therefore, directly attributable to the fault oí’ *460 the defendant. He should, therefore, respond in damages.
Plaintiff contends that the award should be sufficient to pay for the construction of a retaining wall of the quality contemplated in the contract. The answer to this contention is that the amount paid was not sufficient, according to the estimates in the record, to build such a retaining wall. The damage sustained by plaintiff appears to us to be the amount paid for the structure which was useless to him and from which he received no benefit, plus such other sum as would be required to remove the rubbish and place the location in its former condition, ready for the construction of a retaining wall. This cost was shown to be $22.50.
The rule is that, if an undertaker fails to do the work he has contracted to do, or if he does not execute the contract in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his noncompliance with the contract. LSA-C.C. Art. 2769.
Where it is shown, as in this case, that the construction was so defective as to be useless, the loss sustained is the price paid for said construction, plus the cost of the removal thereof, and the cost of restoring the premise to its former condition. Ilgenfritz v. Radalec, Inc., 226 La. 59, 74 So.2d 903; Montague v. Milan, La.App. Orleans, 1953, 67 So.2d 351.
The defendant, however, is due credit for whatever value the work done inures to plaintiff’s benefit. On the estimation which formed the basis of the contract there appears an item of $106.50 for three hours’ bulldozer work and for hauling stumps. Obviously, this work would have been required in the proper construction of a retaining wall. Credit should be allowed for this item. It would appear, therefore, that plaintiff would be entitled to recover of the defendant the sum of $1,111.94, plus $22,50, less $106.50, or the net sum of $1,027.94, except for the fact that the contract provided, also, for the construction of a flower box. The record is silent as to the construction of this box or whether it was a part of the wall itself, or if it survived the accident. Nevertheless, whatever credit, if any, defendant is due on account of the box, the record does not disclose. For the purpose of supplying this deficiency of proof, this cause must be remanded.
For the reasons assigned, the judgment appealed is annulled, avoided, reversed, and set side; and this cause is remanded to the Honorable, the First Judicial District Court in and for Caddo Parish, Louisiana, and ordered reopened for the purpose of receiving evidence with reference to the flower box and the allowance of credit, if any, defendant is due on account thereof; for the fixing and taxing as cost of expert witnesses’ fees; and for further proceedings consistent with the views herein expressed and according to law.
Defendant-appellee is taxed with the cost of this appeal, all other costs to await final judgment.
Reversed and remanded.