[1] This is an appeal from a judgment determining custody of two children.
[2] PROCEDURAL BACKGROUND
[3] Plaintiff-appellant, Gloria Powers Thomas, and defendant-appellee, James Alexander Thom, IV, were divorced on June 28, 1972 and custody of the two children was granted to plaintiff. On December 20, 1972, custody of their two children, Tiffany and Ashley, was awarded to their paternal grandparents. On November 30, 1973, plaintiff was awarded custody of the children pursuant to her rule for change of custody.
[4] In February of 1979, custody of the two children was changed again. On this occasion defendant was awarded a change of custody based primarily upon plaintiff's living in concubinage while maintaining custody of Ashley and Tiffany. That change of custody judgment was ultimately affirmed by this court. SeeBride v. Thom, 378 So.2d 152 (La.App. 1st Cir. 1979).
[5] Two months after her remarriage to her present husband, Scott Thomas, plaintiff filed this rule for change of custody against her former husband, James Alexander Thom, IV, on August 19, 1980, seeking to regain custody of two children born of their marriage. Trial of the rule for change of custody was held on September 18, 1980. At the close of plaintiff's evidence, the trial court granted a directed verdict pursuant to defendant's motion.
[6] Plaintiff then applied for writs of mandamus, certiorari and prohibition to this court. *West Page 444 
We denied the application on the ground that she had an adequate remedy by appeal. see Thomasv. Thom, No. 14,051 (La.App. 1st Cir., October 2, 1980). Subsequently, plaintiff sought the issuance of a writ from the Louisiana Supreme Court which was granted at 396 So.2d 881 (La. 1981). The Supreme Court remanded the case to the district court "for reconsideration in light of Bordelon v. Bordelon,390 So.2d 1325 (La. 1980)."
[7] After remand, the trial court vacated the judgment which granted the directed verdict and reconsidered the case in light of the Bordelon, supra, decision. The trial court then issued written reasons for judgment, again granting defendant's motion for directed verdict. From that judgment, plaintiff has perfected the instant appeal.
[8] FACTS
[9] As can be seen from the procedural background of the case, there has been much instability in the children's lives. The children were initially awarded to plaintiff. However, in December of 1972, about six months after the original award, custody was transferred to the paternal grandparents. Then, in November of 1973, custody of the children was returned to plaintiff. From that point until February of 1979, plaintiff had uninterrupted legal custody of the children. In February of 1979, however, defendant was granted a change of custody pursuant to his rule therefor. The reasons for this change, as can be seen from our prior opinion in the case, were that plaintiff had brought the children into an immoral relationship between another man and herself, and she expressed the belief that there was nothing wrong with such a relationship.
[10] Plaintiff attempted to show at trial and now argues on appeal that she has purged herself of her immoral behavior and instability, and, hence, should again (for the third time) be granted custody of the children. The evidence presented by plaintiff in support of the requested change shows that she terminated her illicit relationship shortly before the custody hearing held in February of 1979. In the interim she met her present husband, Scott Thomas, and they were married in June of 1980. Plaintiff filed the instant rule for change of custody on August 19, 1980.
[11] The record further shows that plaintiff and her present husband live in New Orleans, together with plaintiff's seven year old daughter, by her second marriage, Jessica Bride. Plaintiff is employed as an associate editor for New Orleans InternacionalMagazine; and her husband is a musician, who operates his own recording studio. Mrs. Thomas also does public relations work for several businesses in the New Orleans area. Their home in New Orleans is of adequate dimensions to accommodate Ashley and Tiffany, if their custody was awarded to their mother.
[12] The evidence upon which plaintiff relies heaviest is the testimony of both children to the effect that they would prefer to live with their mother. At the time of trial, Tiffany was fourteen years of age and Ashley was twelve years old. Each of the children indicated that they preferred to live with their mother because they were able to enjoy more activities with her. They also testified that they were able to discuss their problems and other matters more frequently with their mother than with their father. Each of them indicated they were fond of Mr. thomas, plaintiff's present husband. While both children testified that they liked Mr. Thom's wife, Lynn, Tiffany stated that she had had some disagreements with her.
[13] The testimony at trial also showed that the children would get to see their mother more often than their father, since she performed her work in her home. Both children testified that they enjoyed their visits to New Orleans very much. Plaintiff testified that the children would continue to go to church if they were transferred to her custody.
[14] Plaintiff also called several witnesses for the purpose of showing the good character of herself and Mr. Thomas. These witnesses generally stated that both plaintiff and her husband were good parents to Jessica. *West Page 445 
It was also indicated that the relationship among the children and plaintiff and her husband was a good one.
[15] Contrasted with the evidence favorable to plaintiff is the previously mentioned instability created by the numerous change of custody orders. The record manifests that defendant and his current wife are providing a very stable and healthy environment for the children. Defendant is very adamant about the children attending church. Both children are doing very well in school. Moreover, defendant testified, and the children confirmed, that he does spend time with them and accompanies them to certain events. Defendant testified that it is generally on those occasions when they have returned from New Orleans that the children express a desire to live with their mother.
[16] MERITS
[17] On appeal plaintiff complains that the trial court failed to reexamine the instant case in light of the Bordelon
decision.
[18] In its reasons for initially granting the directed verdict, the trial court applied the "double burden" rule formulated by our Supreme Court in Fulco v. Fulco, 259 La. 1122,254 So.2d 603 (1971). In applying the double burden rule, the trial court found that plaintiff had not proved by a preponderance of the evidence one of the Fulco requirements for a change of custody, i.e., that the present custody is deleterious to the children. However, the court in Bordelon interpreted the 1977 amendment to Louisiana Civil Code Article 157 as abrogating the jurisprudentially created requirement of the possibility of harm to the child and left as the sole criterion the best interests of the child. Hence, it is obvious that, when the instant case was remanded for reconsideration in light ofBordelon, the trial court was to reevaluate the evidence without requiring proof of the possibility of harm to the children if they remained in defendant's custody. The trial court did meticulously analyze the case, applying Bordelon,
and concluded that plaintiff had not carried her burden of proving that a change of custody would be in the best interests of the child.
[19] Plaintiff next complains that the trial judge erred in granting a directed verdict when the preponderance of evidence showed it was to the best interests of the minors to be with their mother.
[20] In non-jury cases, the appropriate standard for the trial court's determination of a motion for directed verdict is whether plaintiff has presented sufficient evidence on her case-in-chief to establish her claim by a preponderance of the evidence.Bryan v. Varnado, 394 So.2d 1321 (La.App. 1st Cir. 1981); Sevin v. Shape Spa for Health Beauty Inc.,384 So.2d 1011 (La.App. 4th Cir. 1980). In making its determination on such a motion, the trial court is not required to review the evidence in the light most favorable to plaintiff but may instead render judgment based upon a preponderance of the evidence.Bryan v. Varnado, supra. Moreover, the directed verdict in a non-jury case should not be reversed in the absence of manifest error. Littles v. Southeastern Fidelity InsuranceCo., 398 So.2d 575 (La.App. 1st Cir. 1980).
[21] The "manifest error" doctrine applied to civil cases in general is substantially equivalent to the procedure for appellate review in custody cases, i.e., the determination of the trial court is entitled to great weight and should only be overturned if it is a clear abuse of discretion. Bordelon v.Bordelon, supra.
[22] Analyzing the instant case in light of the above-cited legal principles, we find no error in the trial court's holding that the preponderance of the evidence is in favor of the father. While Bordelon obviates the requirement of proving the possibility of harm to the child, the court continues to recognize stability as an important factor in deciding a change of custody case. Here, stability seems to be of overriding importance. Custody of Ashley and Tiffany has already been shifted four times in the nine years since plaintiff and defendant were divorced. The record indicates that the children have finally settled down in a healthy environment and are doing very *West Page 446 
well in their educational, familial, and social lives. It seems that another change of custody would only serve to rob them of this security.
[23] Plaintiff finally complains that the trial judge did not take into consideration the desire of the children to live with her. It is well-established that the preference of children of the ages of Ashley and Tiffany, twelve and fourteen respectively at the time of the trial of the rule, is entitled to some weight in a custody contest. Johnston v. McCullough, 401 So.2d 509
(La.App. 2nd Cir. 1981); and Sharpe v. Sharpe,328 So.2d 893 (La.App. 1st Cir. 1976). However, the trial court has much discretion in the weight to be assigned to the child's preference. Johnston v. McCullough, supra; and StateIn Interest of Galvan, 384 So.2d 1000 (La.App. 4th Cir. 1980). Here, the trial court carefully analyzed the reasons for the children's preference and was of the opinion that it would still be in their best interests to remain with their father. We find no abuse of discretion in this ruling.
[24] For the reasons assigned, the judgment of the trial court is affirmed at appellant's costs.
[25] AFFIRMED.